UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CREE, INC.,

        Plaintiff,

- against -

XIU PING CHEN, *et al.*,

        Defendants.
----------------------------------------------------------------x

OPINION & ORDER

No. 16-cv-1065 (NG) (CLP)

**GERSHON, United States District Judge:**

Plaintiff Cree, Inc. ("Cree") brings this action against Hang Feng Wu ("Wu"), Xiu Ping Chen ("Chen"), Enumber, Inc. ("Enumber"), and N&K Trading, Inc. ("N&K")—the successor in interest to Yall, Inc. ("Yall")—(collectively "defendants") for violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*[1] Plaintiff filed its initial complaint on October 15, 2015, in the Central District of California. Pursuant to the parties' stipulation, the case was transferred to this district on March 3, 2016. On December 29, 2016, plaintiff sought leave to file an amended complaint, which I granted on April 27, 2017. Plaintiff filed its amended complaint ("Am. Compl.") on May 1, 2017. Defendants now move for partial dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

**I.    Facts**

Plaintiff is a company incorporated in North Carolina that designs, develops, and manufactures light-emitting diodes ("LEDs"). Plaintiff manufactures and sells LED bulbs, LED

---

[1] Plaintiff voluntarily dismissed two other defendants—Xiu Min Chen and Xiu Juan Chen—on September 8, 2016.

1

lighting products, LED components, and LED chips to manufacturers, resellers, and retailers, and licenses its trademarks to manufacturers. Am. Compl. at ¶ 17.

Plaintiff has obtained trademark registrations for the CREE word mark and the XLAMP word mark, and has an application pending for registration of the XM-L word mark. *Id.* at ¶ 18. Additionally, plaintiff has obtained trademark registrations for four Cree design marks (collectively with the word marks, the "Marks"). *Id.* at ¶ 19.[2] Cree alleges that its products have earned a reputation for "innovation, quality and performance, and Plaintiff has spent substantial time, [and] money on television, print, and online advertising in an effort to develop consumer recognition and awareness of its CREE LED Products and the CREE Trademarks." *Id.* at ¶ 20. Because of its extensive use of the Marks and because of the quality of its products, plaintiff contends that the Marks "have been prominently placed in the minds of the public . . . Indeed, the CREE Trademarks are famous in the United States and around the world." *Id.* at ¶¶ 21, 22. As part of its business model, plaintiff "authorizes third party product manufacturers that use CREE LEDs in their products to use the CREE Trademarks under license, including but not limited to third party product manufacturers of consumer portable and high-end portable lighting products such as flashlights, head lamps, lanterns, bike lights, tactical flashlights, and weapon lights." *Id.* at ¶ 24.

Plaintiff claims defendants import non-genuine Cree products from China, sell them online, and then ship the products to the purchasing customer. Plaintiff alleges that defendants import the goods from the Chinese company (not named as a defendant) Fujian Zongteng Network Co., Ltd ("FZN") and store the goods in a warehouse owned by defendants. Then, defendants, in conjunction with FZN, register accounts on Amazon, eBay, and Tmart.com under various

---

[2] These four design Marks correspond to six trademark registration numbers.

usernames to advertise and sell these non-genuine Cree products to the consuming public. The allegedly infringing products sold by defendants include, *inter alia*, flashlights, headlamps, and bike lights. Plaintiff claims that defendants intend to cause consumer confusion such that consumers will believe these are genuine Cree products. *Id.* at ¶ 38.

According to the Amended Complaint, Wu was the chief executive officer of N&K and Enumber, and Chen was the president of N&K. These were the companies that processed the payments for and shipped the goods listed on eBay, Amazon, and Tmart. Given Wu and Chen's prominent positions within these companies, plaintiff claims that they financially benefitted from these transactions.

When plaintiff moved to file the proposed amended complaint, it attached a declaration by Marcus Chaney ("Chaney Declaration"), a supplemental declaration by Marcus Chaney ("Supplemental Chaney Declaration") (collectively, "Chaney Declarations" or the "Declarations"), and exhibits to those declarations. *See* Dkt. Nos. 69-2, 77-1. The Chaney Declarations chronicle the purchases plaintiff made of items bearing the allegedly infringing Marks. Of the seven Marks identified in the Amended Complaint, the Declarations detail purchases of products bearing six of these seven Marks. *See* Chaney Declaration Exs. E, H, K, M, O (showing purchases bearing allegedly infringing Cree and XM-L Marks); Supplemental Chaney Declaration Ex. V (showing purchases bearing the four allegedly infringing design Marks). The only infringing Mark that the Chaney Declarations do not describe as being purchased from defendants is the XLAMP Mark.

Specifically, on January 27, 2015, plaintiff authorized the purchase of a purported Cree flashlight from the eBay seller "yall-fr." Payment for this item was made to N&K. On the purchased item were allegedly non-genuine Cree and XM-L Marks, and the item was received in

a package identifying N&K as the sender. *See* Chaney Declaration Ex. E. In total, plaintiff authorized the purchase of 12 allegedly infringing flashlights that were sold and distributed by N&K. Chaney Declaration at ¶ 7.

On August 5, 2015, plaintiff authorized the purchase of a "4X Car Wedge LED Cree Reverse Light Bulb Signal Backup Lamp." Payment was made to N&K. This item also had allegedly non-genuine Cree Marks, and the item was received in a package identifying N&K as the sender. *Id.* Ex. H.

On October 28, 2015, plaintiff authorized the purchase of an "1800 Lumens Super Bright LED Headlamp." The purchased item's user guide contained the XM-L Mark to describe the type of LED used to power the headlamp, and the item was received in a package identifying N&K as the sender. *Id.* Ex. K.

This action commenced on October 15, 2015. Defendant Wu was served on October 28, 2015. On October 23, 2015, Enumber was incorporated and Wu was identified as the CEO, Secretary, CFO, and President. On March 24, 2016—five months after this action was initiated—plaintiff authorized the purchase of an "LED Headlight for Bicycle." The item's listing on eBay identified the LED emitter brand as "CREE" and the LED type as "XML." *Id.* at ¶ 16; Ex. M. Payment was made to Enumber. The purchased item had an allegedly non-genuine XM-L Mark, and the item was received in a package identifying N&K as the sender. *Id.* Ex. O.

Based on this alleged conduct, plaintiff brings four claims in the Amended Complaint: (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) false designation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a); (3) contributory trademark infringement; and (4)

vicarious trademark infringement.[3] Defendants move for partial dismissal and argue that the Amended Complaint fails to state a claim: (1) as to the XM-L Mark; (2) as to the XLAMP Mark; (3) for false designation of origin as to all Marks; (4) for trademark infringement as to all Marks to the extent the claim relies on consumer confusion rather than counterfeiting; and (5) as to Enumber.

## II. Discussion

### A. Motion to Dismiss Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must draw all inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, "documents attached to the complaint as an exhibit," and documents incorporated by reference in the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A court may also consider a document that is not

---

[3] As discussed below, plaintiff has already dismissed its trademark dilution claim and stipulated that it is discontinuing its pursuit of a counterfeit theory as to the unregistered XM-L Mark.

incorporated by reference if "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotation omitted).[4]

## B. April 26, 2017 Conference

On April 26, 2017, I held a conference regarding plaintiff's motion to amend its complaint. At that time, despite extensive briefing by the parties on many of plaintiff's claims, I limited my rulings to the ways in which plaintiff was seeking to amend its complaint, *i.e.*, (1) to eliminate the California state law claim; (2) add a vicarious trademark infringement claim; (3) add a contributory trademark infringement claim; and (4) add Enumber as a defendant. I granted plaintiff's motion in its entirety. In support of its motion to amend, plaintiff included its proposed amended complaint. After granting plaintiff leave to amend, I directed plaintiff to file the Amended Complaint in the same form as the proposed amended complaint, which plaintiff ultimately did. *See* Transcript of April 26, 2017 Conference ("Transcript") at 19.

In addition to addressing these four proposed amendments, the parties' briefs also extensively discussed the validity of other claims brought by plaintiff in its original complaint. Though I noted that deciding these issues on a motion to amend was improper and that a motion to dismiss was the proper mechanism to present these arguments, I attempted to provide guidance

---

[4] Defendants argue I cannot rely on the Chaney Declarations because they are not incorporated by reference or integral to the Amended Complaint. Defs. Mem. at 10-11. However, these Declarations were attached to the proposed amended complaint. Given my directive, discussed below, that plaintiff file the Amended Complaint in the same form as the proposed amended complaint, I deem the Declarations "attached to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). In their motion, defendants argue that plaintiff's failure to attach these Declarations to the Amended Complaint was for "strategic reasons," but defendants do not identify what these strategic reasons could be. Defs. Mem. at 11. Additionally, defendants fail to identify any prejudice that they would suffer in having these Declarations deemed attached to the Amended Complaint. Defendants were aware of these Declarations prior to moving to dismiss and, in fact, argue their motion to dismiss as if the assertions in the Declarations were part of the Amended Complaint.

6

to the parties regarding the strength of their respective arguments. As a result, plaintiff agreed to dismiss its trademark dilution claim and stipulated that it was discontinuing its pursuit of a counterfeit theory as to the unregistered XM-L Mark. *See* Transcript at 13; Dkt. No. 87.

Contrary to plaintiff's assertion in its opposition to defendants' motion to dismiss, I did not decide any issues presented by the pending motion to dismiss at the April 26 conference. Rather, I stated, "I think I should be addressing now just those things in the proposed amended complaint which would change the currently operative pleading. Unless I hear otherwise from you with regard to this, that's what I intend to do, address that first, and then I'm happy to discuss with you my sense of the validity or invalidity of the other claims." Transcript at 2. Accordingly, I will decide all of the issues defendants present in their pending motion.

### C. Likelihood of Confusion

Turning to the substance of plaintiff's claims, I begin my analysis with whether plaintiff has sufficiently pled likelihood of confusion. Defendants argue that plaintiff has failed to plead likelihood of confusion, thus requiring dismissal of its false designation of origin claim in its entirety and its trademark infringement claim to the extent it relies on a theory of confusion rather than counterfeiting.

Courts employ the same standard when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a), and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). *Virgin Enterps. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). As to an infringement claim, the Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The

elements of trademark infringement are that: (1) the plaintiff holds a valid mark entitled to protection; (2) the defendant used the mark in commerce in connection with the sale or advertising of goods or services without the plaintiff's consent; and (3) the defendant's use is likely to cause confusion. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).

As to a false designation of origin claim, the Lanham Act prohibits any misleading representation of fact that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Though subject to the same standards as a trademark infringement claim, Section 1125(a) protects unregistered marks if they would qualify for registration as trademarks, unlike Section 1114(a) which protects only registered marks. *See Chambers*, 282 F.3d at 155.

Both of these claims require plaintiff to plead likelihood of confusion. A plaintiff can plead likelihood of confusion in two ways. First, plaintiff can plead that defendant's goods are counterfeits. A mark is counterfeit if it is "'identical with, or substantially indistinguishable from, a registered mark.'" *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (quoting 15 U.S.C. § 1127). A counterfeit mark is inherently confusing and confusion is presumed. *See Coach, Inc. v. Allen*, 2012 WL 2952890, at *7 (S.D.N.Y. July 19, 2012). Only registered marks, however, can avail themselves of the counterfeit theory. *See* 15 U.S.C. § 1127; *C&L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 2013 WL 6086907, at *4 (S.D.N.Y. Nov. 19, 2013).

The other way to show likelihood of confusion is pursuant to the eight factors articulated by the Second Circuit in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) ("*Polaroid* factors"). These factors are: (1) the strength of plaintiff's mark; (2) the similarity of

the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will bridge the gap by moving into the junior user's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market. *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (citing *Polaroid Corp.*, 287 F.2d at 495).

The Second Circuit has made clear—and district courts routinely state—that determining the likelihood of confusion is a "a fact-intensive inquiry that depends greatly on the particulars of each case" and "ordinarily does not lend itself to a motion to dismiss." *Kelly-Brown*, 717 F.3d at 307; *Van Praagh*, 993 F. Supp. 2d at 303. "No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand." *Int'l Info. Systs. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016) (internal quotation omitted). Ultimately, the question is whether, "looking at the products in their totality, consumers are likely to be confused." *Id.* (internal quotation omitted). At the pleadings stage, courts have not required plaintiffs to address all of the *Polaroid* factors in order to deem the pleading adequate. *See World Trade Ctrs. Assoc., Inc. v. Port Authority of New York & New Jersey*, 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) (collecting cases). At the same time, in accordance with *Iqbal* and *Twombly*, "a plaintiff is still required to allege facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face." *Public Free Will Corp. v. Verizon Comm'n Inc.*, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017). "[B]road statements—devoid of any factual detail—are plainly insufficient as a matter of law." *Ahmed v. GEO USA LLC*, 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015).

### 1. Plaintiff has Alleged Its Products are Sold to Consumers

Defendants argue, as a threshold matter, that plaintiff has failed to plead that it sells its products to consumers or that its licensees do so, and, therefore, plaintiff cannot show likelihood of confusion.

I reject defendants' premise that "[t]here is not one single allegation that products bearing the alleged genuine marks identified in paragraphs 18 and 19 are offered for sale, sold, marketed, or advertised to consumers." Defs. Mem. at 20. At the motion to dismiss stage, a court must draw all reasonable inferences in plaintiff's favor. Plaintiff has alleged that it has spent substantial time and money on television and internet advertising in order to develop "consumer recognition" of its brand. Am. Compl. at ¶ 20. It also alleges that its product has been prominently placed in the minds of the public, the public associates the Marks exclusively with plaintiff, and that its Marks are famous in the United States and around the world. *Id.* at ¶¶ 21-22. Plaintiff also alleges that it manufactures, sells, and distributes directly and through authorized distributors. *Id.* at ¶ 23. Given plaintiff's allegation that its Marks are famous among the public, that it invests in advertising, and that it "sells and distributes," it is a reasonable inference to draw that consumers have "come into contact" with the Marks, such that they can be confused by consumers. Defs. Mem. at 20.

### 2. *Polaroid* Factors

#### a. Strength of the Marks

"The strength of a mark refers to its ability to identify the source of the goods being sold under its aegis." *Brennan's Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 130 (2d Cir. 2004). This concept of strength includes both inherent distinctiveness and acquired distinctiveness through use in commerce. *Id.* at 130-31.

Because all of the Marks are registered, they are presumed to be inherently distinct.[5] *See id.* Moreover, the Amended Complaint alleges facts as to acquired distinctiveness. For example, it states that the "CREE LED Products have earned a reputation for innovation, quality and performance, and Plaintiff has spent substantial time, money on television, print, and online advertising in an effort to develop consumer recognition and awareness of its CREE LED Products and the CREE Trademarks." Am. Compl. at ¶ 20. Plaintiff also alleges that it "has built up and developed significant goodwill in the CREE LED Products. As a result of the quality and popularity of the CREE LED Products, the CREE Trademarks have been prominently placed in the minds of the public. Manufacturers, resellers, retailers, consumers, and members of the public have become familiar with Plaintiff's CREE LED Products and the CREE Trademarks, and have come to recognize the CREE Trademarks and the CREE LED Products, and associate them exclusively with Plaintiff." *Id.* at ¶ 21; *see also id.* at ¶ 22 ("Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the CREE Trademarks are famous in the United States and around the world.").

Plaintiff has sufficiently pled the strength of its Marks based on the combination of inherent distinctiveness and the acquired distinctiveness that the Marks have attained through use in commerce.

### b. Similarity

Plaintiff repeatedly alleges that the defendants' Marks are confusingly similar to its Marks and provides images of the genuine Marks; and the Chaney Declarations provide images of the

---

[5] I exclude the XM-L Mark (which is unregistered) and the XLAMP Mark from this analysis because, as discussed below, I dismiss all claims premised on these Marks.

allegedly infringing products (which do in fact bear Marks similar to the Marks enumerated in the Amended Complaint).[6] This is sufficient to allege the Marks are similar.

### c. Competitive Proximity of the Products in the Marketplace and the Likelihood that the Senior User will Bridge the Gap

Here, the Amended Complaint alleges that plaintiff manufactures and sells lighting products such as flashlights and headlamps and that defendants are selling non-genuine products of the same variety. Stating that plaintiff and defendants are selling the same products is sufficient to allege that the products are in close competitive proximity to one another. For the same reason, the bridging the gap factor is irrelevant in this case because the parties sell the same product and are, thus, in direct competition.[7] *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003) ("Since the sauce products are in direct competition, this [bridging the gap] factor is not relevant.").

### d. Actual Confusion

The Second Circuit has acknowledged that "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion." *Guthrie Healthcare Syst. v. ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016). The Court went on to conclude that, "[t]here is no evidence in this record of actual consumer confusion . . . While Plaintiff's case would of course be even stronger if it had evidence of actual consumer confusion, the absence of such evidence does not

---

[6] The Chaney Declarations do not provide a photograph of the allegedly non-genuine XLAMP Mark. As stated previously, claims premised on the XLAMP Mark are being dismissed, and I am excluding that Mark from the analysis as to likelihood of confusion.

[7] Bridging the gap refers to the likelihood that the senior user of a mark that is not in direct competition with a junior user will, at some time in the future, expand the scope of its business to enter the junior user's market. *Guthrie*, 826 F.3d at 45.

particularly weaken Plaintiff's showing of likelihood of confusion." *Id.* at 45. Plaintiff has not pled actual confusion here, but if actual confusion need not be shown to ultimately prevail, then it similarly need not be pled. Had plaintiff pled facts supporting this factor, that would, of course, have strengthened its case and affected how I evaluate the totality of the factors, but failing to do so is not dispositive or even "significant." *Id.*

### e. Bad Faith and Respective Quality of the Products[8]

Plaintiff states that defendants' "infringing conduct was committed in bad faith and with the intent to dilute the CREE Trademarks, and to cause confusion and mistake, and to deceive the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants, and/or Defendants' non-genuine, counterfeit goods." Am. Compl. at ¶ 40. Plaintiff provides factual support for this statement by alleging that Defendant Wu was served with the original complaint in this action on October 28, 2015. On October 23, 2015, Enumber was incorporated and Wu was identified as the CEO, Secretary, CFO, and President. On March 24, 2016—five months after this action was initiated—plaintiff purchased an allegedly infringing product from Enumber and the product was shipped by N&K. At that point, defendants were on notice that plaintiff was claiming infringement of its Marks. *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005) ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark.").

As to respective quality of the products, an inferior product may cause injury to plaintiff because it can lead to consumers believing plaintiff's product has declined in quality. *See U.S.*

---

[8] The Second Circuit has noted that two of the Polaroid factors—"defendants' good or bad faith and the quality of defendants' products, are more pertinent to issues other than likelihood of confusion, such as harm to plaintiff's reputation and choice of remedy." *Virgin Enterps.*, 335 F.3d at 147.

*Polo Assoc., Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 537 (S.D.N.Y. 2011). As the Second Circuit has stated:

> [t]he district court found that because of the wide disparity between the products, this factor was neutral. We find this to be clearly erroneous. Paco Sport's clothing is of a lesser quality than Paco Rabanne's expensive designer clothes. Were confusion to exist, it is likely that the casual clothes would diminish Paco Rabanne's reputation for exclusivity. Rather than being neutral, this factor favors Paco Rabanne.

*Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262, at *5 (2d Cir. 2000).

Plaintiff alleges that defendants' products "defraud consumers to believe that the <u>substandard</u> imitations are genuine CREE LEDs, CREE LED Products and/or authorized third party portable lighting products manufactured by Plaintiff's authorized licensees." Am. Compl. at ¶ 58 (emphasis added). In line with *Paco Sport*, plaintiff has alleged that defendants' products are of inferior quality, which, in the *Polaroid* analysis, favors plaintiff.

### f. Sophistication of Consumers in the Relevant Market

"The more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in . . . trademarks will result in confusion concerning the source or sponsorship of the product." *Paco Sport*, 234 F.3d at *6. Plaintiff pleads nothing in relation to this factor.

### g. Totality of the Factors

At this stage of the litigation, the question is whether plaintiff has plausibly claimed a likelihood of confusion. As defendants correctly note, plaintiff cannot rely on conclusory assertions and legal conclusions in its pleading in order to state a claim. *See Dow Jones & Co., Inc. v. Int'l Secs. Exchange, Inc.*, 451 F.3d 295, 307 (2d Cir. 2006); *see also* Defs. Mem. at 8 (collecting cases). However, as detailed above, plaintiff's allegations are not conclusory and lacking in factual support. Plaintiff's allegations amount to it claiming that: (1) it has a strong, well-known mark among "consumers;" (2) the non-genuine Marks are similar to its Marks as

demonstrated by photographs of the non-genuine products; (3) the products are in competitive proximity; (4) the defendants have acted with bad faith, which is supported by defendants' continued sale of non-genuine products after the initiation of this litigation; and (5) the non-genuine products are inferior to the genuine ones. At this stage of the litigation, plaintiff has sufficiently alleged a likelihood of confusion. *See Fischer v. Forrest*, 2015 WL 195822, at *10 (S.D.N.Y. Jan. 13, 2015); *The Name LLC v. Arias*, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010);

Accordingly, I deny defendants' motion to the extent it seeks to dismiss the false designation of origin claim in its entirety due to plaintiff's failure to plead likelihood of confusion. I also reject defendants' motion to dismiss the infringement claim to the extent it is premised on a consumer confusion theory.

### D. The Unregistered XM-L Mark

Plaintiff's XM-L Mark differs from its other Marks because it is unregistered, though plaintiff does have a registration application pending for it before the United States Patent and Trademark Office ("USPTO").[9] *See* Pl. Opp. at 10. The XM-L Mark can be protected only by Section 1125(a) because that statute protects unregistered marks if they would qualify for registration, as opposed to Section 1114(a), which protects only already registered marks. *See Chambers*, 282 F.3d at 155.

---

[9] In its opposition, plaintiff states that the XM-L Mark is still unregistered, but notes that the XM-L Mark was "approved for publication on the principal registered by the USPTO on June 2, 2017." Pl. Opp. at 13. Plaintiff does not argue that this status somehow changes the analysis. The pertinent issue is whether the Mark is registered or unregistered, and plaintiff states that the Mark is still unregistered.

In order to qualify for trademark registration, a mark must be either inherently distinctive or have acquired secondary meaning in the minds of consumers. *See Star Indus.*, 412 F.3d at 381. "Common basic shapes or letters are, as a matter of law, not inherently distinctive." *Id.* at 382 (internal quotation omitted). A mark acquires secondary meaning when "in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." *Vedder Software Grp. Ltd. v. Ins. Servs. Off., Inc.*, 545 Fed. Appx. 30, 33 (2d Cir. 2013).[10]

Courts analyze six factors to determine whether a mark has acquired secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) (internal quotation omitted).

In its Amended Complaint, plaintiff states generally as to all of the Marks (rather than specifically as to the XM-L Mark) that the "Cree Trademarks are fanciful, inherently distinctive and/or have acquired distinctiveness and secondary meaning." Am. Compl. at ¶ 53. There are no facts as to any of the factors that inform whether XM-L has acquired secondary meaning. The only factor the Amended Complaint arguably addresses is that plaintiff has expended substantial resources in advertising. *Id.* at ¶ 20. Even assuming for purposes of this analysis that plaintiff has sufficiently pled this factor, it is silent as to the other six factors that speak to secondary meaning. As to the Mark being inherently distinctive, plaintiff simply states the legal conclusion that the XM-L Mark is inherently distinctive, with no facts to support the assertion that the XM-L Mark is

---

[10] The analysis as to secondary meaning is the same for both trademark infringement claims and trade dress infringement claims (as were at issue in *Vedder Software*). *See GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 293-94 (S.D.N.Y. 2002).

"intrinsically capable of identifying its source." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (internal quotation omitted).

In light of plaintiff's failure to allege that the XM-L Mark is either inherently distinctive or has acquired secondary meaning, any claims premised on this Mark are dismissed. *See Vedder Software Grp.*, 545 Fed. Appx. at 33; *Bubble Genius LLC v. Smith*, 2017 WL 888251, at *6-9 (E.D.N.Y. Mar. 6, 2017); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 2017 WL 627461, at *3 (S.D.N.Y. Feb. 15, 2017); *cf. Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 2017 WL 74729, at *7 (S.D.N.Y. Jan. 4, 2017) (finding sufficient allegations regarding secondary meaning where plaintiff alleged the advertising budget, external recognition and awards received, sales figures, and the length and exclusivity of use of the mark in question).

### E. Enumber

Given the XM-L Mark is not actionable, defendants argue that Enumber should be dismissed because its only alleged wrongdoing stems from that Mark. Defendants do not address the fact that the Chaney Declaration states the following as to Enumber, "The [allegedly infringing product] listing identified the LED emitter brand as 'CREE' and the LED type as 'XML.'" Chaney Declaration at ¶ 16. A review of the corresponding Exhibit M demonstrates that the eBay listing at issue advertising the item for sale lists the "Emitter Brand" as "CREE." Though only the XM-L Mark appears on the product, the word CREE appears on the listing for sale. *See* Chaney Declaration Exhibit O. Section 1114(1)(a) prohibits "the use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, <u>offering for sale</u>, distribution, or <u>advertising</u> of any goods or services." *Id.* (emphasis added). Though the XM-L Mark is not actionable, the Cree Mark is. For this reason, I do not dismiss Enumber as a defendant.

### F. XLAMP Mark

Defendants contend that claims premised on the XLAMP Mark must be dismissed because the Amended Complaint and the Chaney Declarations do not reference any conduct defendants have taken as to XLAMP. Integral to both its infringement and false designation of origin claims is whether consumers are likely to be confused. Plaintiff claims infringement as to seven Marks. The Chaney Declarations and the accompanying exhibits provide photographs showing six of the seven Marks appearing on products allegedly bought from defendants (the Cree word mark, the XM-L word mark, and the four design marks). However, the XLAMP Mark never appears in the Chaney Declarations or the accompanying exhibits. Plaintiff alleges nothing to support its claim that defendants ever sold products bearing the XLAMP Mark. Also, without seeing the XLAMP Mark on defendants' product, it is impossible to assess similarity, a factor integral to the likelihood of confusion analysis which plaintiff must plead in order to state a claim for trademark infringement and false designation of origin. For these reasons, plaintiff's claims premised on the XLAMP Mark are dismissed.

### G. Leave to Amend

Courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). A request to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies by amendments previously allowed, or futility of the amendment. *See Cox v. Blackberry Limited*, 660 Fed. Appx. 23, 25 (2d Cir. 2016).

Defendants contend that plaintiff has already had an opportunity to amend its complaint and that further amendment is not warranted given this previous opportunity and plaintiff's failure to identify how it would cure the pleading deficiencies. As discussed above, part of the

complication in this case stems from the procedure employed as to the motion to amend. In conjunction with its motion to amend, plaintiff offered a proposed amended complaint. At the April 26 conference, plaintiff was granted leave to amend, but instructed to file the Amended Complaint in the same form as the proposed amended complaint that accompanied its brief supporting its motion to amend. Given this directive, plaintiff did not have the opportunity to revise the proposed amended complaint in a way that addressed issues raised at the conference, including issues related to the XM-L Mark. Accordingly, plaintiff may seek leave to amend, in accordance with Rule 15(a)(2), in order to address the pleading deficiencies as to the XM-L Mark and the XLAMP Mark.

### III. Conclusion

Defendants' motion to dismiss is denied as to: (1) the false designation of origin claim; (2) the trademark infringement claim; and (3) Enumber. As to the XM-L and XLAMP Marks, defendants' motion is granted and plaintiff's claims premised on these two Marks are dismissed. If plaintiff wishes to amend, it must seek leave to do so by August 24, 2017.[11]

**SO ORDERED.**

/s/ Nina Gershon
_____
NINA GERSHON
United States District Judge

Dated: July 27, 2017
Brooklyn, New York

---

[11] A pre-motion conference for any such motion is unnecessary.